NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:  FREDDIE ROBINSON, JR. and
NICOLE M. ROBINSON,

                                   Chapter 13
                                   Case No. 11-26981-RTL

         Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## OPINION

**APPEARANCES:**
DAVID PAUL DANIELS, P.A.
Tamika Nicole Wyche, Esq.
Attorneys for Debtors

THOMAS J. ORR
John Justin, Esq.
Attorneys for Rivers Edge at Delanco

ALBERT RUSSO
Howard J. Schmidt, Esq.
Attorney for Standing Chapter 13 Trustee

**RAYMOND T. LYONS, U.S.B.J.**

## INTRODUCTION

The Debtors propose to strip off the condominium association's lien claim which is purportedly secured solely by equity in the Debtors' principal residence.  Additionally the Debtors propose to cramdown the claim to zero because there is no equity in the property above

1

the first mortgage.

Because the New Jersey Super Lien Law grants the association a lien with priority over the mortgage for up to six months of delinquent assessments and because the association filed a Notice of Assessment Lien pursuant to the same statute, the association's claim is secured. Therefore, the secured claim cannot be modified by a Chapter 13 plan.

## JURISDICTION

This court has jurisdiction of this proceeding under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all cases and proceedings arising under Title 11 of the United States Code to the bankruptcy court. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A) concerning the administration of the estate and 28 U.S.C. §157(b)(2)(L) concerning the confirmation of plans.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

Freddie Robinson and Nicole M. Robinson (Debtors) have proposed a Chapter 13 plan and one of the creditors, Rivers Edge at Delanco (the "Association") objects. In the Plan, the Debtors propose to cramdown the Association's claim of $9,214.20 to zero. Additionally, the Debtors propose to strip off the claim and have it reclassified as unsecured.

The Association is a condominium owner's association and the underlying debt is for unpaid condo association assessments. The condo itself is worth $180,000 and the first mortgage is for $278,000. The Association filed a Notice of Assessment Lien for the unpaid assessments in the amount of $1,362 with the Burlington County Clerk on March 20, 2008, long before this

bankruptcy case commenced. In addition to the $1,362, the lien provides that the "total shall continue to increase as monthly assessments accrue."

Additionally, there is a master deed on file with the county clerk. The copy submitted with the Association's pleadings is stamped as having been received on May 27, 2008, which is a curious date considering the Association's assertion that the master deed was recorded on September 1, 2004.

The Association's proof of claim is for $9,214.20. Based on the Association's statement attached to the proof of claim, it appears that the Association applies payments to the most recent assessment first instead of to the oldest assessment. The statement does not detail all missed payments. Rather, it begins on July 31, 2010, which was a couple of months after the petition date. It lists a forwarded balance of $5,427.83 and, including several payments and additional assessments, concludes with a balance due of $6,412.76. The Association's claim then adds on $315.07 in assessments, $500 in attorney's fees, and a 10% interest rate for the life of a 60 month plan, which totals $9,214.20. It is unclear what the monthly assessments were in March, 2008.

## DISCUSSION

Section 46:8B-17 of the New Jersey statutes provides, in relevant part: "The amount of common expenses charged to each unit shall be a lien against such unit subject to the provisions of section 21 of this act." N.J. STAT. ANN. § 46:8B-17. Section 21 provides, in relevant part:

> a. The association *shall have a lien on each unit for any unpaid assessment* duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees . . . . *Such*

3

> *lien shall be effective from and after the time of recording in the public records of the county in which the unit is located of a claim of lien* stating the description of the unit, the name of the record owner, the amount due and the date when due. *Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded* and shall be signed and verified by an officer or agent of the association. . . . *Except as set forth in subsection b. of this section, all such liens shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien.*
>
> b. A lien recorded pursuant to subsection a. of this section *shall have a limited priority over prior recorded mortgages* and other liens, , [sic] except for municipal liens or liens for federal taxes, to the extent provided in this subsection. This priority shall be limited as follows:
> (1) To a lien which is the result of *customary condominium assessments* as defined herein, *the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien.*
>
> . . .
>
> For the purpose of this section, a "customary condominium assessment" shall mean an assessment for periodic payments, due the association for regular and usual operating and common area expenses pursuant to the association's annual budget and *shall not include amounts for reserves for contingencies, nor shall it include any late charges, penalties, interest or any fees or costs for the collection or enforcement of the assessment or any lien arising from the assessment*.

N.J. STAT. ANN. § 46:8B-21 (emphasis added).

Under subsection a., an association has a lien for unpaid assessments and the effective date of that lien is the time of the recording of the lien. Subsection a. states that the claim is only for "sums which are due and payable when the claim of lien is recorded." *Id.* The subsection later

4

provides: "Except as set forth in subsection b. of this section, all such liens shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien." *Id.* So, in this case, the lien for assessments is subordinate to the mortgage except as set forth in subsection b.

Subsection b. explains that a lien that is recorded following the requirements of subsection a. has a priority over recorded mortgages subject to several limitations. *Id.* Notable here is that the priority is limited to the aggregate customary condominium assessment for the six-month period prior to the recording of the lien. *Id.*

*The Association Has a Lien Against the Property*

First, the Association has a lien which arises from the master deed and the statute. The relevant language of the master deed is in section 7.02 which provides: "All charges and expenses chargeable to any Unit constitute a lien against said Unit in favor of the Association." Reply Brief in Support of Objection to Plan, Exhibit Master Deed at 16-17, *In re Robinson*, No. 11-26981-RTL (D.N.J. Feb. 14, 2012), ECF No. 51. Second, the association filed a valid Notice of Assessment Lien with the county clerk for unpaid assessments. Those unpaid assessments do not appear to have been satisfied. As such, the Association has a lien for at least the amount of that notice, $1,362.

5

*N.J.S.A. 46:8B-21 Operates to Give the Association's Lien a Limited Priority Over the Mortgage*

As is evident from section 46:8B-21(b) of the New Jersey statutes, an assessment lien that is recorded pursuant to subsection a., grants the association in question a limited priority over prior recorded mortgages. *See also* WENDELL A. SMITH, DENNIS A. ESTIS, & CHRISTINE F. LI, NEW JERSEY CONDOMINIUM & COMMUNITY ASSOCIATION LAW 21:4 (2012) ("The Super Lien Law provides that an assessment lien recorded pursuant to N.J.S. 46:8B-21a will have a limited priority over prior recorded mortgages and other liens except those for municipal liens or liens for unpaid federal taxes."). One of the limitations is that the priority is limited to six months' of unpaid assessments. N.J. STAT. ANN. § 46:8B-21(b)(1). Although it is unclear what the monthly assessments were in March, 2008, the court does not need to answer that question at this time because whatever the monthly payments were, they have priority over the mortgage for up to six months' worth and, therefore, the lien of $1,362 is secured by at least some equity in the property.

Also, the amount of the lien does not automatically increase to include assessment charges after the filing of the Notice of Assessment Lien. In addition to the clear language of the statute ("Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association." N.J. STAT. ANN. § 46:8B-21(a)), Judge Wizmur in *In re Robinson* addressed this issue and stated:

> The Association's lien is valid only as to the amount due at the time it was recorded, here, $705.85. We have no evidence in the record that the Association obtained a lien for any of the other prepetition amounts due and owing. Accordingly, these amounts must be viewed as unsecured claims.

231 B.R. 30, 35 (Bankr. D.N.J. 1997).

The language in the lien providing that the amount "shall continue to increase as monthly assessments accrue" cannot override such a clearly worded statute and there's no evidence of additional filings of notices.

*Section 7.21 of the Master Deed Does Not Operate to Give the Association Priority Over the Mortgage*

The Association argues that section 7.21 of the master deed provides the Association with a lien that comes in front of all subsequent liens except in cases of foreclosure. That section reads:

> The lien of the assessments provided for herein shall be subordinate to any lien for past due and unpaid taxes and the lien of any first mortgage or mortgages held by an Institutional Lender now or hereafter placed upon any Home; provided, however, that such subordination shall apply only to the assessments which have become due and payable prior to a sale or transfer of any such Home pursuant to a judgment of foreclosure or a deed in lieu of foreclosure. Such sale or transfer shall not relieve any such Home from liability for any assessments thereafter becoming due, nor from the lien of any such subsequent assessment.
>
> If an Institutional Lender or other purchaser of a Home obtains title to such Home as a result of foreclosure of such first mortgage (or by a deed of conveyance in lieu thereof), such acquirer of title, his/her successors and assigns, shall not be liable for the assessments by the Association pertaining to such Home or chargeable to the former Homeowner thereof which became due

7

> prior to acquisition of title as a result of the foreclosure. Such unpaid sums shall be deemed to be Common Expenses collectible from all of the remaining Homeowners, including such acquirer, his/her successors and assigns.
>
> Liens for unpaid assessments may be foreclosed by suit brought in the name of the Association in the same manner as a foreclosure of a mortgage on real property. Subject to the foregoing exceptions, suit to recover a money judgment for unpaid assessments may be maintained against the record Owner of the home as of the effective date of the assessment or against all subsequent record Owners thereof, without waiving the lien securing the same, all of which record Owners shall be jointly and severally liable with respect to same.

Reply Brief in Support of Objection to Plan, Exhibit Master Deed at 21, *In re Robinson*, No. 11-26981-RTL (D.N.J. Feb. 14, 2012), ECF No. 51.

     The Association argues that because the subordination language of section 7.21 only applies when the property is foreclosed, that the reverse must be true: the assessment lien has priority in non-foreclosure scenarios.   This reads section 7.21 too broadly.   First, this court does not view the section in the same light.   The section appears to be explaining the respective rights in the foreclosure context of purchasers who take pursuant to a foreclosure, the institutional lender holding the mortgage, and the Association.   Reading into the section an explanation of parties' respective rights outside of foreclosure is going too far.

     Second, reading 7.21 in the manner proposed by the Association would directly conflict with section 7.02 of the master deed which provides:

> All charges and expenses chargeable to any Unit constitute a lien against said Unit in favor of the Association.   That lien is prior to all other liens except (a) assessments, liens and charges for taxes past due and unpaid on the Unit; and (b) *payments due under bona*

> *fide and duly recorded Mortgage instruments, if any, except to the
> extent modified by any applicable New Jersey or Federal Law.*

*Id.* at 16-17.

Third, such a reading also conflicts with state law which provides that a lien for unpaid assessments is effective on the date the notice of lien is filed, only covers the amount due on the date of filing, and only provides a limited priority.   N.J. STAT. ANN. § 46:8B-21.

Based on this, although section 46:8B-21 of the New Jersey statutes provides the Association with priority at least to part of their secured claim, section 7.21 of the master deed does not give the entirety of the Association's claim priority over the mortgage.

*The Debtors Cannot Cramdown or Strip-Off the Association's Secured Claim*

The Debtors' plan proposes to modify the Association's claim by cramming it down to zero.   Further, the Debtors move to strip-off the claim and have it reclassified as unsecured.   11 U.S.C. § 1322(b) provides: ". . . the plan may . . . modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .*"   11 U.S.C. § 1322(b) (2006).   The Debtors' proposed treatment of the Association's secured claim is impermissible.   The court cannot modify the rights of even partially secured claims which are claims only secured by the Debtors' principal residence.   *In re Nobleman*, 968 F.2d 483, 489 (5th Cir. 1992); *see also In re McDonald*, 205 F.3d 606 (3d Cir. 2000).

9

## **CONCLUSION**

Based on the foregoing, confirmation of the plan will be denied and the motion to strip-off the secured claim of the Association will also be denied.


Dated: March 2, 2012              /s/ **RAYMOND T. LYONS**
                                  United States Bankruptcy Judge